# SHER TREMONTE LLP

March 16, 2020

**VIA ECF AND EMAIL**

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        **Re:**    *United States v. Howard Campbell*
                Case No. 18 Cr. 467 (LDH)

Dear Judge DeArcy Hall:

We write on behalf of our client, Howard Campbell, to respectfully request immediate release in light of the increasingly dire COVID-19 coronavirus pandemic. This is not an ordinary request or one we anticipated making, given that we were preparing to appear for sentencing on April 16, 2020.  However, we are duty-bound to request this extraordinary relief based on the exigencies of the current situation.

Mr. Campbell's release is warranted for four reasons:  (1) The conditions of confinement at the MDC are very likely to constitute a humanitarian crisis when the virus is introduced to the facility; (2) the Bureau of Prisons' thirty-day ban on all legal and social visits makes it impossible for us to prepare for the April 16, 2020 sentencing hearing with Mr. Campbell's meaningful participation; (3) Mr. Campbell is among the lowest-level offenders in federal custody, having been convicted of a lesser-included offense of attempted street-level drug dealing; and (4) Mr. Campbell's age and poor health—combined with the lack of adequate medical care in the MDC—expose him to an unacceptably high risk of fatal infection if the MDC becomes an incubator for the coronavirus, as is likely.  These factors compel the undersigned to make this application on an emergency basis; time is of the essence.

### The Conditions at the MDC Are Likely to Become a Humanitarian Crisis

Over the course of seventeen months, Mr. Campbell has faced two humanitarian crises while in BOP custody.  He was initially transferred to the MDC during the period last winter in which the facility went without power and heat, and prisoners were locked down for days at a time.  *See generally Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249 (E.D.N.Y. 2019) (DeArcy Hall, J.) (describing allegations that prisoners at the MDC "had not been provided heat, hot water, or additional blankets, notwithstanding below-freezing temperatures[,] were unable to refill medication or

The Honorable LaShann DeArcy Hall
March 16, 2020
Page 2

receive necessary medical treatment, had not been provided clean clothing or bedding, and were locked in their cells for long periods of time without explanation").

Now, he faces the threat of coronavirus within the detention center's walls.  Mr. Campbell will be particularly vulnerable "when, not if" coronavirus comes to the MDC[1], an "incubator" for the disease[2] with "petri-like-conditions."[3]  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[4]  Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[5]  In China, officials have confirmed the

---

[1] Rich Schapiro, *Coronavirus Could 'Wreak Havoc' on U.S. Jails, Experts Warn*, NBC NEWS (Mar. 12, 2020), https://www.nbcnews.com/news/us-news/coronavirus-could-wreak-havoc-u-s-jails-experts-warn-n1156586 ("We're in a very perilous stage right now," said Dr. Homer Venters, the former chief medical officer of the New York City jail system. "It's just a matter of time before we see cases inside jails and prisons.").

[2] Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'*, NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

[3] P. Leila Barghouty, *U.S. Prisons Are Not Ready for Coronavirus*, THE OUTLINE (Mar. 6, 2020), https://theoutline.com/post/8770/prison-coronavirus-covid-19-outbreak?zd=1&zi=oixu2i52; *see also* Kaiser Health News, *Could Coronavirus Cause a National Prison Lockdown?*, U.S. NEWS & WORLD REPORT (Mar. 13, 2020), https://www.usnews.com/news/healthiest-communities/articles/2020-03-13/could-coronavirus-cause-a-national-prison-lockdown ("Though small by comparison, the federal system sheds light on issues many state, county and local officials are grappling with now.  Because the facilities are typically dense and crowded, they could become prime breeding grounds for the highly contagious coronavirus."); Chris Strohm, *Prisons' Coronavirus Risk Puts Justice Department Under Pressure*, BLOOMBERG (Mar. 12, 2020) (noting concerns that coronavirus outbreak "could spark riots"); Courtney Bublé, *Federal Prison Employees and Others Question BOP's Readiness for Coronavirus*, GOV. EXEC. (MAR. 11, 2020), https://www.govexec.com/management/2020/03/federal-prison-employees-and-others-question-bops-readiness-coronavirus/163692/ ("History has shown time and time again that the Federal Bureau of Prisons has never been a proactive agency, but instead a reactive agency."); Joshua Eaton, *Federal Prisons Don't Have Coronavirus Test Kits for Inmates*, ROLL CALL (Mar. 6, 2020), https://www.rollcall.com/2020/03/06/federal-prisons-dont-have-coronavirus-test-kits-for-inmates/ ("Federal prisons, whose inmates may be a high-risk population for a coronavirus outbreak, do not have kits to test for the disease available.").

[4] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[5] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

The Honorable LaShann DeArcy Hall
March 16, 2020
Page 3

coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[6]  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons."[7]  Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[8]  Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners.[9]

The 1,600 detainees at the MDC face especially high risk.  The majority of the individuals imprisoned there are housed in small two-man cells with a shared toilet and sink, and eat meals and have recreation in groups of seventy or more.  Other units are open dormitories that house seventy or more inmates without the ability to separate.  The medical care at the MDC has repeatedly failed to adequately address even routine medical conditions such as diabetes and anemia.[10]  In times of crisis, such as the freeze and lockdown last winter, the medical care has halted entirely.  New reports have noted that "there is no soap or hand sanitizer at the Metropolitan Detention Center" despite prison officials "begging the Department of Justice for weeks"[11]; in fact, "alcohol-based hand sanitizer is contraband in New York prisons."[12]  These dangerous conditions exacerbate what is already a frightening and dire situation for the general population, and raise constitutional concerns of cruel and unusual punishment, especially for prisoners who are at greater risk of contracting lethal infections such as the novel coronavirus due to factors such as age or pre-existing medical conditions.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) ("[D]eliberate indifference to serious medical needs of prisoners

---

[6] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[7] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[8] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

[9] *Coronavirus: Sentenced to COVID-19*, THE DAILY APPEAL (Mar. 12, 2020) at https://theappeal.com

[10] *E.g., National Association of Women Judges (NAWJ) Women in Prison Committee (WIP) Second Visit to BOP's Metropolitan Detention Center (MDC), Brooklyn, New York, June 3, 2016*, *at* https://bit.ly/39JRhdW.

[11] Nathalie Baptiste, *The Coronavirus is Spreading and Reportedly There's No Soap at This Federal Jail in Brooklyn*, MOTHER JONES (Mar. 9, 2020), https://www.motherjones.com/politics/2020/03/the-coronavirus-is-spreading-and-reportedly-theres-no-soap-at-this-federal-jail-in-brooklyn/.

[12] Julia Conley, *'Nightmare Waiting to Happen': Advocates Warn US Prison Conditions Risks Intense Coronavirus Outbreak*, COMMON DREAMS (Mar. 10, 2020), https://www.commondreams.org/news/2020/03/10/nightmare-waiting-happen-advocates-warn-us-prison-conditions-risks-intense.

The Honorable LaShann DeArcy Hall
March 16, 2020
Page 4

constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (citation and internal quotation marks omitted).

Attorneys at the Federal Defenders of New York have been negotiating with the BOP for days, without success, in an attempt to ameliorate prison conditions.  On March 12, 2020, members of the CJA Panel were informed by the Federal Defenders that BOP precautionary measures, including "scree[n]ing/testing, plans for a positive test, continued attorney access, and video conferencing" were "close to non-existent."[13]  Thus far, the only plan communicated to the Federal Defenders by the BOP should a prisoner at the MDC become symptomatic for COVID-19, is to confine that individual to the SHU, where the cells are cold, rife with black mold, and the ceiling leaks directly onto the beds.  On March 13, counsel for the MCC advised by email that the BOP had closed all legal visitation nationwide for a minimum of 30 days.  Since then, the undersigned has requested that the MDC make Mr. Campbell available to meet with us by telephone, as other defense lawyers with clients in the MDC and MCC have requested telephone or in-person visits pursuant to the BOP's assertion that it would allow such meetings on a case-by-case basis.  However, the Federal Defenders, which has been tracking these requests, noted in a letter to Chief Judges Katzmann, Mauskopf and McMahon that, "so far, not a single [attorney-client meeting] has been scheduled by the BOP."[14]

### Mr. Campbell Should Be Released

Your Honor remanded Mr. Campbell on February 21, 2020 for violations of his conditions of release.  While we do not dispute the accuracy of the violations, failure to adhere to location monitoring or failing a marijuana drug test cannot justify continued incarceration in light of the potentially fatal risks of the coronavirus pandemic.  Judge Orenstein faced this very issue a few days ago in deciding whether a defendant, who failed fourteen of fifteen drugs tests and missed eleven drug treatment sessions while on home detention, should have his pre-trial supervised release terminated.[15]  In declining to remand the defendant, Judge Orenstein stated that what may have been "an easy call a month ago" is no longer so because "[o]ur community includes the people incarcerated at the MDC . . . [a]nd let's not kid ourselves.  The more people we crowd into that facility, the more we're increasing the risk to the community.  I'm really hesitant to respond to drug usage with incarceration given that risk."[16]

---

[13] Email from David Patton to Eastern District Criminal Justice Act Panel, dated Mar. 12, 2020.

[14] Letter from David Patton to Chief Judge Robert M. Katzmann, *et al.*, dated Mar. 15, 2020, attached hereto as **Exhibit A**.

[15] Tr. of Hr'g 5:18-6:15, *United States v. Raihan*, 20-CR-68 (BMC) (E.D.N.Y. Mar. 12, 2020) (ECF No. 20), attached hereto as **Exhibit B**.

[16] *Id.* at 10:12-25; *see also* Emily Bazelon, *Our Courts and Jails Are Putting Lives at Risk*, N.Y. TIMES (Mar. 13, 2020), https://www.nytimes.com/2020/03/13/opinion/coronavirus-courts-jails.html ("It also makes sense

The Honorable LaShann DeArcy Hall
March 16, 2020
Page 5

Mr. Campbell is in the same category of offender as the defendant in Judge Orenstein's proceeding.  He is not a danger to society.  He is not violent, and his crime of conviction is minor in the scheme of federal offenses.  He attempted to sell a quantity of cocaine base that does not trigger a mandatory minimum sentence (despite the minimal amount of crack one must sell to trigger such draconian outcomes under federal criminal law) and that would be *the lowest level of drug weight recognized under the Sentencing Guidelines* had it been powder cocaine.  While on pretrial supervision following trial, Mr. Campbell ate a marijuana cookie, was late to attend and return from several doctors' appointments, and, yes, he was untruthful with Pretrial Services about his whereabouts.  None of this justifies continued incarceration that may well pose a risk to Mr. Campbell's life and certainly does more to *increase* the danger to the community by overcrowding a jail facility that could serve as an incubator for the virus.

Moreover, as the Court made clear at the bail revocation hearing, it was Your Honor's intent to keep Mr. Campbell incarcerated at least through sentencing, which is currently scheduled for April 16, 2020.  The BOP's restriction on visitors, however, will make it impossible for Mr. Campbell to meaningfully prepare for, or participate in, his sentencing.  *See United States v. Fishenko*, No. 12 CV 626 SJ, 2014 WL 5587191, at *2 (E.D.N.Y. Nov. 3, 2014) ("Defendants retain constitutional rights to participate in their own defense.").  Due to the suspension of all visitation, we, as well as the psychological expert Your Honor authorized to evaluate Mr. Campbell, will be unable to visit him before his April 16 sentencing to prepare a mitigation report, review the PSR, or review a sentencing submission with him in advance of filing.[17]  While we have requested a legal call with Mr. Campbell, it is essentially a foregone conclusion that we will lack meaningful legal access given the BOP's track record in prior crises and the complete absence of evidence that it has a workable plan to address the current emergency.  As Your Honor stated during the heat crises one year ago, "[m]y problem is I don't trust the representations coming out of BOP."[18]  There is no reason to believe this

to stop arresting and incarcerating people for technical—that is, noncriminal—violations of parole and probation.").

[17] *See* Fed. R. Crim. P. 32(i)(1)(A) (requiring that, at sentencing, "the Court must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report"); *United States v. Cortez*, 841 F.2d 456, 459 (2d Cir. 1988) (stating that review of the PSR is important because "the presentence report has a life of its own [that] survives sentencing and can influence a defendant's future treatment") (citation and internal quotation marks omitted).

[18] Nick Pinto, *The Power Is Back On At Brooklyn Jail, But a Visiting Federal Judge Found Untreated Gunshot Wound, "Black Blotchy Mold," and Ongoing Crisis*, THE INTERCEPT (FEB. 6, 2019), https://theintercept.com/2019/02/06/mdc-brooklyn-metropolitan-detention-center-federal-judge-tour/.  *See Fed. Defs. of New York*, 416 F. Supp. 3d at 250 ("Plaintiff also has proffered evidence that [BOP's] representations regarding conditions in MDC have been incomplete or inaccurate.").  We note that following the crisis regarding the conditions at the MDC last year, the warden of the facility at the time was *promoted* by the BOP to a supervisory regional position.

The Honorable LaShann DeArcy Hall
March 16, 2020
Page 6

time will be different, and accordingly, if the Court does not take action now, it is likely that the April 16 sentencing will have to be adjourned indefinitely and Mr. Campbell subjected to life-threatening conditions in the interim.  As the Court is aware, Mr. Campbell is in his mid-fifties[19], is hobbled by several physical ailments, and will likely be at great risk *when* the coronavirus arrives at the MDC—an eventuality that is, in all likelihood, only days away.

The foregoing circumstances warrant immediate release.  At a minimum, they clearly constitute exceptional circumstances warranting bail under 18 U.S.C. § 3145.  In the alternative, we request that sentencing be advanced to a date as soon as practicable this week.  At that sentencing, we will be requesting that Mr. Campbell be sentenced to time served.  Given the Court's familiarity with the case and Mr. Campbell, we will further request that any sentencing arguments be made orally in order to streamline the proceeding.  If released, Mr. Campbell would reside with his girlfriend, Felicia Baker at her apartment on Vernon Avenue in Brooklyn.

Respectfully submitted,

/s/_____
Noam Biale
Michael Tremonte
Alexandra Elenowitz-Hess

*Attorneys for Howard Campbell*

cc:    AUSA Kayla Bensing (via ECF)
       AUSA Gillian Kassner (via ECF)
       Howard Campbell (by US Mail)

---

[19] The Chinese Center for Disease Control has released data showing that the fatality rate for individuals over the age of fifty is more than three times that of individuals aged forty-to-fifty.  *See* Lam Thuy Vo, *These Charts Break Down Who Is Most At Risk of Dying From the Coronavirus*, BUZZFEED NEWS, Mar. 13, 2020, https://www.buzzfeednews.com/article/lamvo/coronavirus-death-rates-age-charts-us-china.