# Exhibit B

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 20-CR-68(BMC)
                              *
                              *    Brooklyn, New York
                              *    March 12, 2020
     v.                       *
                              *
RASEDUR RAIHAN,               *
                              *
           Defendant.         *
                              *
* * * * * * * * * * * * * * * *

 TRANSCRIPT OF CRIMINAL CAUSE FOR TELEPHONE STATUS CONFERENCE
            BEFORE THE HONORABLE JAMES ORENSTEIN
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           MICHAEL BUSHWACK, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201


For the Defendant:            LETICIA MARIA OLIVERA, ESQ.
                              Federal Defenders of New York,
                                Inc.
                              One Pierrepont Plaza, 16th fl.
                              Brooklyn, NY  11201
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1    (Proceedings commenced at 1:59 p.m.)
2              THE CLERK:  Criminal cause for status conference on
3    docket no. 20-CR-068, United States of America versus Rasedur
4    Raihan.
5              Counsel, please state your name for the record.
6              MR. BUSHWACK:  Michael Bushwack for the United
7    States.  Good afternoon, everyone.
8              THE COURT:  Good afternoon.
9              MS. OLIVERA:  Leticia Olivera on behalf of Mr.
10   Raihan.  Good afternoon.
11             THE COURT:  Good afternoon.
12             MS. OLIVERA:  Mr. Raihan, just to confirm, you're
13   on the line?
14             THE COURT:  Good afternoon, Mr. Raihan.  It's Judge
15   Orenstein.
16             THE DEFENDANT:  Good afternoon.
17             THE COURT:  All right.  Anyone else on the line?
18             (No response.)
19             All right, folks.  And I just before getting on the
20   phone received a report alleging the violation of the order
21   of conditions of release.  It's dated today.  Have you all
22   had a chance to see it?
23             MR. BUSHWACK:  So as we're speaking, Your Honor,
24   it just came through on my email.  However, I did earlier
25   today speak with the Pretrial Services officer, Robert Long,

1   who also indicated to me that he spoke with Ms. Oliveri
2   earlier today.
3              THE COURT:  Ms. Oliveri, you're aware of the
4   substance of the report?
5              MR. BUSHWACK:  I'm sorry, Your Honor.  Could you
6   say that again?
7              THE COURT:  I just asked if you're aware of the
8   substance of the report.
9              MS. OLIVERA:  I am.
10             THE COURT:  Well, we'll circle back to the bail
11  issue.  First of all, I saw, Mr. Bushwack, the government
12  just in the last day or so provided some discovery.  Is that
13  correct?
14             MR. BUSHWACK:   That's correct.
15             THE COURT:  Okay.  Is there anything either of you
16  wanted to raise in terms of housekeeping, either plans for
17  further discovery or motion practice?
18             MR. BUSHWACK:   Not in terms of the government,
19  Your Honor.  We have produced substantial discovery and hand
20  delivered it to counsel earlier today.  My apologies for
21  incorrectly filing it on the electronic docket.
22             But in terms of the discovery, the vast majority,
23  if not all, has been produced to date.
24             THE COURT:  Okay.  And Mr. Bushwack, I just didn't
25  want an open motion on the docket.  I don't otherwise care

1       how you style it.
2               Ms. Olivera, are you anticipating any motions?
3               MS. OLIVERA:  Your Honor, as is our standard
4       practice, we'll review the government's initial discovery
5       production and then file a Rule 16 discovery letter.  And
6       then, you know, we'll confer with the government to see if we
7       should anticipate any additional discovery in response to
8       that request.
9               THE COURT:  Okay.  All right.  Are you engaged in
10      plea negotiations?
11              MR. BUSHWACK:   We have had some preliminary
12      conversations.  And as it relates to discovery, I mean,
13      obviously, I'm open to discuss anything with counsel.  If
14      there's anything outstanding specific that you're looking
15      for, I'd be more than happy to address any of those issues,
16      if it's not already contained in that discovery.
17              But in terms of plea negotiations, we did have
18      preliminary plea discussions and negotiations.  I imagine
19      those will probably continue after review of the discovery,
20      but I certainly don't want to speak for counsel.
21              MS. OLIVERA:  That's correct, Your Honor.
22              We have discussed -- we have had preliminary
23      discussions about how to resolve this case.  But until we get
24      the discovery we can't really start considering the guideline
25      range or anything that we would have to -- or the sorts of

1  things we would have to advise Mr. Raihan on before we can
2  meaningfully move forward with predisposition or motion
3  practice in preparation for trial.
4             So I anticipate that after reviewing the discovery
5  we'll be in a better position to start moving forward.
6             THE COURT:  Okay.  Well, I will set this down for
7  another conference.  I'd like to make it 30 days but my
8  schedule precludes that.
9             Let's plan on another conference at -- on Tuesday,
10 April 21st at 11:00 a.m.
11            MR. BUSHWACK:  That is acceptable to the
12 government.  Thank you, Judge.
13            THE COURT:  Does that work for you?
14            MS. OLIVERA:  That works for us also.
15            THE COURT:  Okay.  And at that conference I'll
16 expect either to set a motion or send the case back to Judge
17 Cogan for trial proceedings.
18            Now what are the parties' positions with respect to
19 the alleged violation of conditions of release?
20            MR. BUSHWACK:  If Your Honor wouldn't mind, I'd
21 like to, I guess, place on the record the substance of my
22 conversation with Pretrial Services, Mr. Long, earlier today.
23            And there is a decent amount of background as it
24 relates to that.
25            So on February 12th of this year we had a bail

1    revocation hearing before Judge Bloom and that was predicated
2    upon the defendants having failed 14 of 15 drug tests and
3    also having 11 missed treatment sessions.  That was all
4    placed on the record and discussed with the court.
5             As a result of that conference, the judge had
6    ordered the defendant to home detention with an ankle
7    bracelet and electronic monitoring and also had ordered that
8    as soon as a bed became available, the defendant was to then
9    go to an inpatient facility.
10            My understanding from Mr. Long and Pretrial
11   Services is that as of today no bed is available, but also
12   Judge Bloom's directives were predicated upon the fact that
13   the defendant wouldn't have any subsequent failures or
14   violations in terms of his treatment and the conditions
15   placed upon him.
16            In speaking with Mr. Long earlier today, he
17   indicated that the individual who was the drug treatment
18   specialist, a Ms. Laura Fahmy, F-A-H-M-Y, unfortunately, is
19   not available today or is not in the office today. He's not
20   sure if she'll be in the office tomorrow. But as of today
21   there are no beds available for Mr. Raihan.
22            OFFICER SANAN-JULES:   I can answer that. My name
23   is Ignace Sanan-Jules of Pretrial Services.  I'm actually
24   Officer Long's supervisor.
25            THE COURT:  Oh, great.  I didn't know you were on

1       the line.
2               OFFICER SANAN-JULES:  Yeah, I just logged in. I was
3       trying to get in. I had difficulty.
4               So the defendant continues to test positive.  In
5       fact, he was tested on February 27th and that test was
6       positive for amphetamines.  So he's still using.
7               Our concern is now he's on home detention.  There
8       is no treatment facility available.  There's been a slow down
9       because trying to also deal with the COVIN-19 virus.  So
10      we're not sure when placement's going to be available.
11              When we had our appearance before Judge Bloom we
12      did recommend that the defendant be detained pending
13      placement.  This may be delayed now because of what's going
14      on and he still continues to use.
15              THE COURT:  I get the --
16              MS. OLIVERA:  Your Honor --
17              THE COURT:  Yes, go ahead, Ms. Olivera.
18              MS. OLIVERA:  So the result that we're discussing
19      is two weeks old.  Mr. Raihan is attending outpatient
20      treatment and my understanding is that the outpatient
21      treatment provider does test him twice a week.
22              I submitted to the Pretrial Services office test
23      results that were collected from the specimen on February
24      27th as the treatment provider that returned results that
25      were negative for all substances.

1  Pretrial Services has not given any indication
2  about whether they are aware of any positive results since
3  then.
4  I do -- I can only assume that Mr. Raihan has
5  continued to attend outpatient treatment at the treatment
6  provider they set up with him and has continued to be tested
7  for the past two weeks, but we have not heard anything from
8  Pretrial about those tests that should have happened since
9  the 27th.
10  THE COURT: All right. Is the government -- go
11  ahead.
12  PRETRIAL SERVICES OFFICER SANAN-JULES: I could
13  definitely follow up and find out the results from the
14  treatment program. I do not have that available right now.
15  THE COURT: Okay. Is the government seeking any
16  relief at this point?
17  MR. BUSHWACK: The government was in agreement
18  with Pretrial Services back in February, February 12
19  specifically, that the defendant should be detained pending
20  any inpatient. I don't think -- you know, his subsequent
21  failures to comply with the terms and conditions just
22  reinforces that position.
23  And with respect to the statement that the
24  defendant was negative on the 27th at the treatment facility
25  that was explained to me by Mr. Long, which makes perfect

1      sense, that the treatment facility's cut offs are much higher
2      than that of Pretrial Services.  So it's just that -- it's
3      not that he was -- and this is based on the information
4      provided by Pretrial.
5               It's not that Mr. Raihan was, in fact, clean on the
6      27th. It's just that the cut off with respect to testing at
7      the treatment facility is much higher than that of Pretrial
8      Services.
9               THE COURT:  So you know --
10              MR. BUSHWACK:  So the government --
11              THE COURT:  Excuse me.  Mr. Bushwack, you're saying
12     you know how much -- you're saying that had it been a
13     different test on that date, he would have tested positive?
14              MR. BUSHWACK:  Based on the information provided by
15     Pretrial Services, if the cut offs would have been lower at
16     the facility, correct.  And Mr. --
17              THE COURT:  Wait, wait, wait.  Wait.  Are we
18     talking about two different dates?
19              MR. BUSHWACK:  No, we're talking about the same
20     date, Your Honor.
21              THE COURT:  I see.
22              OFFICER SANAN-JULES:  The same thing.  That
23     information is accurate.
24              THE COURT:  Okay.  So listen, Mr. Bushwack, let me
25     ask you, I think now the third time. Maybe you'll answer it

10

1  this time. Are you seeking any relief today?
2           MR. BUSHWACK:  That's a difficult question, Your
3  Honor, just because --
4           THE COURT:  Yes, and it's the one I've had to ask
5  you now four times.  How man -- let's do it this way.
6           Just let me know the number of times I need to ask
7  it before you'll give me an answer.  Whatever that number is,
8  please pretend I've asked it that many times.
9           MR. BUSHWACK:  Yes.
10          THE COURT:  Okay.  What relief are you seeking?
11          MR. BUSHWACK:  That the defendant's detained.
12          THE COURT:  Okay.  If this were a month ago, I
13 think that would be a relatively easy call.
14          Under the Bail Reform Act I have to consider the
15 risk to the community.  Our community includes the people
16 incarcerated at the MDC, those who work there and those who
17 live and interact with those who work there.  And let's not
18 kid ourselves.  The more people we crowd into that facility,
19 the more we're increasing the risk to the community.
20          I'm really hesitant to respond to drug usage with
21 incarceration given that risk. Is there any reason to think
22 that continuing Mr. Raihan on the conditions that I recognize
23 that are not working as intended will endanger the community?
24          OFFICER SANAN-JULES:  Ignace from Pretrial. I
25 don't think it's an added danger to the community.  My

11

1    concern is for his health and well being.
2            THE COURT:  Yes.
3            OFFICER SANAN-JULES:  He doesn't live with his
4    parents. He lives with a bunch of roommates.  He's using and
5    I'm just afraid he may overdose one day, because it's not
6    just marijuana.  He's smoking heavy stuff.
7            THE COURT:  I hear you and like I say, this would
8    be an easy call a month ago.
9            Mr. Raihan, you're on the phone.  You can hear me,
10   right?
11           THE DEFENDANT:  Yes, sir.
12           MS. OLIVERA:  Your Honor, I'd also like to request
13   the opportunity to be heard at some point.
14           THE COURT:  Please.  Let me hear you.
15           MS. OLIVERA:  Your Honor, we're talking about a
16   drug result from two weeks ago that we are disputing based on
17   another -- a conflicting result from the treatment provider.
18   We understand --
19           THE COURT:  Again, Ms. Olivera -- but you know
20   what?  That -- as far as I'm concerned, for today's purpose
21   that ship has sailed.
22           If you have some other argument to make, I'm happy
23   to hear.
24           MS. OLIVERA:  Okay.  But what I'd like --
25           THE COURT:  But the record makes sufficiently clear

1   to me that your client is continuing to use in violation of
2   the conditions of his release.
3              The really tough question for me is what to do
4   under the circumstances in which we find ourselves where
5   incarceration is likely to increase the risk to the
6   community.
7              Do you want to say anything on that?
8              MS. OLIVERA:  If we are gauging the risk to the
9   community or my client, I think it's important to know what
10  has happened in the two weeks that have passed since the
11  27th.
12             Pretrial is telling us that they don't know the
13  test results that he's had over the past two weeks and there
14  is every indication that he's continued to attend treatment.
15             So if the case is that he's been clean for the past
16  two weeks and attending treatment, then I believe that shows
17  that any danger to the community or Mr. Raihan himself is
18  greatly reduced.
19             I think it's very different to say that someone has
20  been continuously using than that someone received a positive
21  result two weeks ago that could have been residual use,
22  wasn't confirmed.
23             There may be some sort of issue with it that we
24  don't believe -- it doesn't appear has been explored, but I
25  think that if we're talking about a remand, we should at

13

1   least know what's happened in the two weeks from that
2   positive test result.
3           THE COURT:  All right. Thank you.
4           I'm going to continue the defendant on release but
5   Mr. Raihan, if you continue to use, as I am satisfied you
6   have been doing, I'll have to revisit this issue.
7           I really don't want to put you in the MDC, Not if
8   you're not doing something to affirmatively endanger people
9   and even at the risk, quite frankly, that your continued use
10  of drugs will endanger yourself.
11          If you continue to use, you're only hurting your
12  own chances for remaining at liberty and your own health. And
13  I want to be informed promptly if there's any further
14  positive test.
15          Do you understand me, Mr. Raihan?
16          THE DEFENDANT:  Yes.
17          THE COURT:  All right.  Is there anything else for
18  today?
19          MR. BUSHWACK:   Nothing from the government.  Thank
20  you.
21          MS. OLIVERA:  Nothing from the defense.
22          THE COURT:  Thank you, all.  Have a good day.
23          MR. BUSHWACK:   Thank you.
24          MS. OLIVERA:  Thank you, Judge.
25          (Proceedings concluded at 2:16 p.m.)

14

1   I, CHRISTINE FIORE, court-approved transcriber and certified
2   electronic reporter and transcriber, certify that the
3   foregoing is a correct transcript from the official
4   electronic sound recording of the proceedings in the above-
5   entitled matter.

*Christine Fiore*

_____         March 12, 2020

Christine Fiore, CERT

Transcriber