

|  | U.S. Department of Justice |
|---|---|
|  | *United States Attorney*<br>*Eastern District of New York* |
| NS:KCB/GK<br>F. #2018R01632 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

March 17, 2020

<u>By Email and ECF</u>

The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Howard Campbell
     <u>Docket No. 18-CR-467 (S-1) (LDH)</u>

Dear Judge DeArcy Hall:

  The government respectfully submits this letter in response to defendant Howard Campbell's motion for release on bail, filed on March 16, 2020, in which he requests to be released from Bureau of Prisons custody due to the COVID-19 pandemic. For the reasons set forth below, the motion should be denied.

I. <u>The Defendant Must Be Detained Under Section 3143</u>

  As set forth in the government's detention memorandum dated December 19, 2019, which is incorporated herein by reference, the defendant was convicted on December 13, 2019, of attempted possession of cocaine base with the intent to distribute, in violation of 18 US.C. § 841(b)(1)(C). <u>See</u> Minute Entry dated Dec. 13, 2019. On December 16, 2019, the Court denied the defendant's application for release on bail without prejudice after taking note of the defendant's lengthy criminal history, including his prior failures to appear in court, requiring the issuance of bench warrants, as well as the fact that the defendant possessed a loaded firearm at the time of his arrest. <u>See</u> Minute Entry dated Dec. 16, 2019.

  On December 20, 2019, following the defendant's motion to reconsider the Court's remand after his conviction, the Court acknowledged that 18 U.S.C. § 3143 mandated that the defendant, who had been found guilty of a controlled substance offense for which a maximum term of imprisonment of 10 years or more is prescribed, "shall" be detained. <u>See id.</u> (requiring that judicial officer "shall order" that a person found guilty of certain specified offenses "be detained"). Specifically, because the defendant was found

guilty of attempted possession with intent to distribute cocaine base, and the maximum term of incarceration for that crime is 20 years, the defendant's conviction triggers the mandatory-remand provision of § 3143.  See 18 US.C. §§ 841(b)(1)(C), 3143(a)(2).  Nonetheless, the Court determined that the defendant had demonstrated "exceptional reasons" justifying his release pursuant to 18 U.S.C. § 3145(c), which provides, in relevant part, that a defendant who must otherwise be detained under § 3143 "may" be released if he establishes "exceptional reasons."  Specifically, the Court held that exceptional reasons justified the defendant's release because there would be a "non-remote chance that Mr. Campbell would serve more time in custody than he would be sentenced to."  Dec. 20, 2019 Order.

On February 21, 2020, following several violations of the terms of the defendant's bond, including the defendant's failure to abide by his home detention, repeated lies to Pretrial Services and a positive drug test, the Court determined that "exceptional reasons" no longer justified the defendant's continued release on bond, and the Court ordered the defendant remanded pending sentencing.  See Minute Entry, Feb. 21, 2020.  Sentencing is scheduled for April 16, 2020.  The Presentence Investigation Report ("PSR") calculates the United States Sentencing Guidelines range faced by the defendant at sentencing to be 63 to 78 months' incarceration.  PSR ¶ 75.

Because the defendant has been convicted of a narcotics offense for which mandatory remand is statutorily required, and because the Court has determined that exceptional circumstances do not warrant the defendant's release, the government respectfully opposes the defendant's request for immediate release.  As set forth below, the defendant's current circumstances do not warrant release.

II.   Release Is Not Warranted Under the "Exceptional Reasons" Clause

The defendant seeks pretrial release on the grounds that he may be at risk for contracting COVID-19, a respiratory illness that can spread from person to person, should that virus be introduced to the Metropolitan Detention Center ("MDC").  The defendant again seeks release under 18 U.S.C. § 3145(c), urging that circumstances caused by COVID-19 constitute new "exceptional reasons" authorizing release. Exceptional reasons exist where there is a "unique combination of circumstances giving rise to situations that are out of the ordinary," such as "an unusual legal or factual question."  United States v. DiSomma, 951 F.2d 494, 497 (2d Cir. 1991).

According to information received from counsel for the MDC, the defendant, a 53-year-old man, is currently housed in a two-man cell.[1]  At present, there have been no

---

[1]  The medical information provided by the defendant in connection with his PSR reflects a history of glaucoma, impaired vision, migraine headaches and shoulder, back and knee pain.  PSR ¶ 58.

confirmed cases of COVID-19 in Bureau of Prisons ("BOP") facilities, including the MDC.[2] The BOP has implemented national measure to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp.

These measures, which have been implemented at the MDC, include the following:

- Suspension of all social and legal visits: Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls. Inmates will be provided additional inmate telephone minutes each month.

- Inmate movement: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- Modified Operations: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

In addition, counsel at the MDC, after consultation with the relevant staff, has advised the government that inmates incarcerated at MDC, including the defendant, are permitted to take additional steps to self-seclude by remaining in their cells.

The BOP is monitoring the status of the COVID-19 virus and is taking emergency steps to ensure the safety of its staff, inmates and the public. The defendant is not uniquely situated with respect to the risk of infection of COVID-19, and his personal circumstances do not overcome the mandatory detention provision of 18 U.S.C. § 3143 or

---

[2] One federal detention center in Washington reported that six inmates had what appeared to be flu-like symptoms. These inmates were isolated and tested. All six tested negative for COVID-19. In addition, a staff member in Kentucky was exposed to an individual who had testified positive for COVID-19, and was placed in quarantine for 14 days. See BOP COVID-19 Status, available at https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_status

constitute "extraordinary circumstances" for his release under § 3145(c). Accordingly, the permanent order of detention should remain in effect.[3]

III. The Defendant's Request for Expedited Sentencing

The defendant requests, in the alternative, that his sentencing be advanced to a date as soon as practicable. The government has no objection to this request.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Kayla Bensing
Gillian Kassner
Assistant U.S. Attorneys
(718) 254-6279

cc: The Honorable LaShann DeArcy Hall, United States District Judge (by ECF)
Defense Counsel (by ECF)
Clerk of Court (by ECF)

---

[3] If the Court were inclined to grant the defendant's motion, the government opposes the defendant's proposed residence with Felicia Baker, who appeared to have been actively aware of the defendant's possession of a gun, marijuana and cocaine base prior to his arrest. For example, text messages between the defendant and Baker in the month prior to his arrest reveal that Baker threatened (but failed) to inform the "79th precinct" that the defendant possessed "lots of crack and weed" as well as a gun.