# SHER TREMONTE LLP

March 19, 2020

**VIA ECF AND EMAIL**

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:    *United States v. Howard Campbell*
                 Case No. 18 Cr. 467 (LDH)

Dear Judge DeArcy Hall:

      We write on behalf of our client, Howard Campbell, to respectfully request that the Court reconsider its March 18, 2020 order (the "Order") denying bail pending sentencing in light of the coronavirus pandemic.

      In our bail application dated March 16, 2020, we set forth what has been recognized by public health experts, policymakers, and informed citizens: the coronavirus will be extremely difficult to contain and deadly if it is introduced inside a jail or prison. News reports and government warnings about this looming public health disaster have continued unabated since we filed our letter.[1]

      The government's letter in opposition to our motion, Dkt. # 130, does not dispute that Mr. Campbell is among the lowest-level offenders in the federal system; it does not argue that he is a danger to society or a flight risk; and it does not attempt to argue that a once-in-a-century pandemic that has brought global commerce and everyday life for millions of Americans to a halt is not an "extraordinary circumstance[]" warranting release under 18 U.S.C. § 3145. Instead, the government's letter simply lists various measures the BOP has said it will take *nationally*, adds that as an additional measure the MDC will "permit[]" inmates to "self-seclude by remaining in their cells" (which are occupied by *two* inmates in a space originally designed to house just one, and require the sharing of a single toilet and sink), and asserts without specificity that the BOP is taking "steps to ensure the safety of [BOP] staff, inmates, and the public." *Id.* at 3. With respect to Mr. Campbell, all the government can muster is that he is "not uniquely

---

[1] *See, e.g.*, Danielle Ivory, *We Are Not a Hospital: A Prison Braces for Coronavirus*, N.Y. Times, Mar. 17, 2020, https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html; Chandra Bozelko, *While the coronavirus lasts, we must stop filling prisons or we'll extend the crisis*, NBCNews.com, Mar. 18, 2020, https://www.nbcnews.com/think/opinion/while-coronavirus-pandemic-lasts-we-must-stop-filling-prisons-or-ncna1162176; German Lopez, *A coronavirus outbreak in jails or prisons could turn into a nightmare*, Vox.com, Mar. 17, 2020, https://www.vox.com/policy-and-politics/2020/3/17/21181515/coronavirus-covid-19-jails-prisons-mass-incarceration.

situated with respect to the risk of infection of COVID-19, and his personal circumstances do not overcome the mandatory detention provision of 18 U.S.C. § 1343." *Id.*

The BOP's assurances—which the government only faintly endorses—should not be credited. As detailed in the attached affidavit of Jonathan Giftos, M.D., the former Clinical Director of Substance Use Treatment for NYC Health & Hospitals, Division of Correctional Health Services at Rikers Island, conditions in correctional settings, and *especially* the specific conditions at the MDC *in particular*, "increase the risk of infection substantially." Aff. of Dr. Jonathan Giftos, attached hereto as **Exhibit A**, ¶ 15. Whatever the efficacy of the BOP's plans for its facilities writ-large (most of which are long-term prison facilities in rural locations, not urban detention centers, let alone the largest federal pre-trial detention center in the nation), the consensus of public health experts makes clear that such generalized plans should give the Court no comfort when it comes to the MDC and Mr. Campbell. As discussed in our prior letter, the administration of the MDC has a disturbing track record of inadequate responses to humanitarian crises within its walls and has long failed to provide reasonable medical care to inmates. As recent epidemiological studies have indicated that a far higher percentage of adults aged 20 to 54 require hospitalization for coronavirus than previously thought,[2] the crisis that will result from the inevitable introduction of the virus to the MDC will be even swifter and greater than what we described in our original application.

Even were the Court to assume that the MDC would do everything in its power to ameliorate the risks of COVID-19 entering the facility and spreading, its power in this context is limited by its sparse medical staff (three doctors for 1700 inmates) who are not available after 5 p.m. or on weekends; its lack of a medical unit in which to care for symptomatic inmates; its lack of COVID-19 testing kits; its lack of hand sanitizer; and its inability in the face of this large population to make social distancing possible. The MDC is not set up to handle this crisis, and its capacity is likely to *decrease* as staff members become ill and attend to family members in need. *See* Giftos Aff. ¶¶ 16-17.

The government's argument that Mr. Campbell should be required to face these dire conditions, which are well beyond the norm of punishment authorized by the Eighth Amendment, because he is "not uniquely situated" is uniquely heartless. Moreover, it is contrary to the actions taken by conscientious law enforcement officials around the country. District Attorneys Eric Gonzalez and Cyrus Vance have endorsed a plan by the City Board of Correction to release not only vulnerable prisoners but also low-level offenders to reduce the crowding in New York City jails.[3] Large municipalities like Los

---

[2] *see* Pam Belluck, *Younger Adults Comprise Big Portion of Coronavirus Hospitalizations in U.S.*, Mar. 18, 2020, https://www.nytimes.com/2020/03/18/health/coronavirus-young-people.html?action=click&module=Top%20Stories&pgtype=Homepage

[3] *See* Julia Marsh & Andrew Denny, *City may free jailed suspects over coronavirus*, N.Y. Post, Mar. 17, 2020, https://nypost.com/2020/03/17/city-may-free-jailed-suspects-over-coronavirus/.

Angeles have already begun taking such steps.[4] At the federal level, ICE has announced it will halt all arrests except those deemed "mission critical" to "maintain public safety and national security" until the threat of the virus has passed."[5]

Judicial decision-makers have similarly recognized that "[t]his public health crisis is serious and urgent." Criminal Case Standing Order Re: Procedure for Review of Detention Orders in Light of Coronavirus Pandemic, N.D. Cal, Mar. 16, 2020, attached hereto as **Exhibit B**. In an opinion and order issued today, Judge Nathan in the Southern District found that the coronavirus pandemic constituted "changed circumstances" warranting reconsideration of her prior detention decision under 18 U.S.C. § 3142(f) for a defendant who, we are informed by counsel, is not in the high-risk category based on age or health status. Op. & Order, *United States v. Stephens*, 15-cr-95 (AJN) (S.D.N.Y. Mar. 19, 2020), attached hereto as **Exhibit C**. Judge Nathan further held that release was warranted under 18 U.S.C. § 3142(i), which provides, "[A] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." *Id.* at 5. Judge Nathan held that "the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under" that provision. *Id.*[6] This decision echoes what Judge Orenstein stated in plain terms, "[L]et's not kid ourselves. The more people we crowd into that facility, the more we're increasing the risk to the community." Tr. of Hr'g 10:17-19, *United States v. Raihan*, 20-CR-68 (BMC) (E.D.N.Y. Mar. 12, 2020), attached to our prior submission; *see also United States v. Smith*, 34 F. Supp. 3d 541, 550-51 (W.D. Pa. 2014) ("[A] significant health emergency may constitute an exceptional reason that requires immediate release from detention. A district court should have the authority to consider whether extraordinary health issues would permit a defendant's release from detention so as not to impose 'an unusually harsh effect of a personal nature not ordinarily experienced by an individual facing incarceration.'" (quoting *United States v.*

---

[4] *See* Alene Tchekmedyian, Paige St. John & Matt Hamilton, *L.A. County releasing some inmates from jail to combat coronavirus*, L.A. Times, Mar. 16, 2020, https://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amid-coronavirus.

[5] Ian Kullgren, *ICE to scale back arrests during coronavirus pandemic*, Politico.com, Mar. 18, 2020, https://www.politico.com/news/2020/03/18/ice-to-scale-back-arrests-during-coronavirus-pandemic-136800.

[6] Judge Nathan also cited the suspension of legal visits in BOP facilities as an additional "compelling reason" to grant bail given that suspension impacts the Defendant's ability to prepare his defenses to the alleged violation of supervised release in advance of the merits hearing scheduled for March 25, 2020." *Id.* at 5. Here, similarly, the suspension of visits severely hinders our ability to prepare Mr. Campbell's defense at sentencing, as we are unable to meet with him and our expert is unable to evaluate him in person. We have been actively seeking workarounds to this barrier – we have been able to have one brief legal call with Mr. Campbell and have requested that our expert be permitted to interview him by phone (though have not yet received any response from the MDC). We are thus endeavoring to prepare for sentencing even with the current restrictions, but our ability to conduct the fulsome mitigation investigation we would ordinarily present to the Court is seriously compromised. Release is therefore also warranted to ensure that Mr. Campbell has the effective assistance of counsel at sentencing.

*Green*, 250 F. Supp. 2d 1145, 1150 (E.D. Mo. 2003))). The government is alone in pretending that the current situation is business as usual.

Your Honor knows the undersigned to be vigorous advocates but not ones to take hyperbolic positions. We also are not in the habit of requesting reconsideration of matters that have been resolved by the Court. But we are compelled to renew this extraordinary request given the extraordinary circumstances. Again, *even accepting every negative inference the government can ascribe to Mr. Campbell, he remains at the very low end of the spectrum of federal criminal defendants.* The danger of keeping him detained in the MDC outweighs any need to punish him, to ensure compliance with supervision requirements, or to protect the community. As there is no barrier under the law to his release, we respectfully request that the Court reconsider its Order. At a minimum, we request an opportunity to be heard orally on the application by telephone and to discuss with the Court how to proceed on the current sentencing schedule given the limitations imposed on us by the BOP's emergency measures.

Respectfully submitted,

/s/
Noam Biale
Michael Tremonte
Alexandra Elenowitz-Hess

*Attorneys for Howard Campbell*

cc: AUSA Kayla Bensing (via ECF)
　　AUSA Gillian Kassner (via ECF)
　　Howard Campbell (by US Mail)