

U.S. Department of Justice

United States Attorney
Eastern District of New York

NS:KCB/GK
F. #2018R01632

271 Cadman Plaza East
Brooklyn, New York 11201

March 19, 2020

By Email and ECF

The Honorable LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Howard Campbell
              Docket No. 18-CR-467 (S-1) (LDH)

Dear Judge DeArcy Hall:

      The government respectfully submits this letter in response to defendant Howard Campbell's motion to reconsider the Court's denial of his motion for release on bail. For the reasons set forth below and in the government's letter dated March 17, 2020 ("March 17 Letter"), the motion should be denied.

I.     Legal Standard for Reconsideration

      "[T]here is no specific rule, either in the Federal Rules of Criminal Procedure or in this court's Local Criminal Rules, providing for the reconsideration of a ruling on a criminal matter." United States v. James, 2007 WL 914242, at *3 (E.D.N.Y. Mar. 21, 2007). Instead, "courts in this district have resolved [such motions] according to the same principles that apply in the civil context[,]" namely Local Civil Rule 6.3. Id.; United States v. DiPietro, No. 02 CR 1237, 2007 WL 3130553, at *1 (S.D.N.Y. Oct. 17, 2007) (citing cases).

      Under Local Civil Rule 6.3, a motion for reconsideration "should inform the court of the matters or controlling decisions which counsel believes the court has overlooked."[1] A Rule 6.3 motion is "not a motion to reargue those issues already considered

---

[1]     Local Civil Rule 6.3 provides, in relevant part:

        A notice of motion for reconsideration or reargument of a court
        order determining a motion shall be served within ten (10) days
        after the entry of the court's determination of the original motion

when a party does not like the way the original motion was resolved, nor may a party on a motion for reconsideration advance new facts, issues or arguments not previously presented to the court." James, 2007 WL 914242, at *3 (internal quotation marks and citations omitted). As the Second Circuit has explained, the standard governing a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995); United States v. All Right, Title and Present Interest in Real Property Known as 479 Tamarind Drive, Hallandale, Fla., 2007 WL 3118660, at *2 (S.D.N.Y. 2007) ("A motion for reconsideration is not a vehicle for litigants to make repetitive arguments that the court has already considered and it cannot be used to fill in the gaps of a losing argument."); Nielsen v. New York City Dep't of Educ., 2007 WL 2743678, at *1 (E.D.N.Y. 2007) (noting that the Shrader standard "is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court").

## II. Reconsideration is Unwarranted

As an initial matter, the defendant has failed to inform the Court of any controlling decisions or data overlooked by the Court. Rather, the defendant impermissibly seeks to "reargue those issues already considered." James, 2007 WL 914242, at *3. The Court may deny the defendant's motion on that basis alone.

In any event, the defendant has failed to demonstrate "extraordinary reasons" authorizing his release pursuant to 18 U.S.C. § 3145(c). First, the defendant renews his claims regarding the risks that inmates at the Metropolitan Detention Center ("MDC") may face should the COVID-19 virus be introduced there. As the government informed the Court in its March 17 Letter, at present, the MDC currently has no confirmed cases of COVID-19. The government also informed the Court in its March 17 Letter of certain steps being taken by Bureau of Prisons ("BOP") facilities, including the MDC, to handle the risks posed by COVID-19. In addition to those steps, which include health screening protocols for both staff and inmates, the government understands from MDC staff that (i) cleaning supplies are issued once a week, and all inmates have access to soap; (ii) inmate orderlies are cleaning the common areas of the institution; (iii) health services has identified those inmates who fall

---

. . . . There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. The time periods for the service of answering and reply memoranda, if any, shall be governed by Local Civil Rule 6.1(a) or (b), as in the case of the original motion. No oral argument shall be heard unless the court directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

within an "at risk" population for COVID-19 and are monitoring the needs of those inmates as well as those of the rest of the population; (iv) showers are available on a daily basis; and (v) legal calls are being provided by unit team staff to maintain communication between inmates and their attorneys. Moreover, although the MDC is not one of the BOP's Federal Medical Centers, on a case-by-case basis, BOP's health professionals send inmates for consultations and treatments at New York City hospitals and other medical facilities. The availability of COVID-19 tests is generally limited nationwide, but the BOP is working to test inmates where needed.[2]

The defendant next attempts to rely on an out-of-district decision in United States v. Stephens, No. 15-CR-95 (AJN) (March 18, 2020 S.D.N.Y.). In Stephens, the Court released a previously-detained defendant accused (but not yet convicted) of a supervised release violation after determining that "the strength of the primary evidence relied upon by the Government to demonstrate the danger the Defendant poses to the community has been undermined by new information not available to either party at the time of [the prior detention] hearing." Id. at 1-2. As for the risks to the defendant from the COVID-19 pandemic, the court in Stephens specifically declined to rule on whether the health risks from the pandemic met the standard applicable to temporarily release defendants not yet convicted. Id. at 6 n.3. Rather, the court found that a "compelling reason" justified release pursuant to 18 U.S.C. § 3142(i) because the defendant had proffered specific, unrebutted facts demonstrating that certain precautions taken by the BOP were impeding his ability to prepare for a hearing scheduled for the following week—March 25, 2020. Id. at 5-6.

Here, by contrast, the defendant has been convicted and faces an entirely different statutory standard than that applicable in Stephens.[3] Unlike the defendant in Stephens, the strength of the government's case has been demonstrated, and resulted in a trial conviction. Moreover, unlike the defendant in Stephens, who had represented to the Court that he had limited-to-no ability to prepare for an upcoming evidentiary hearing, the defendant can prepare for his April sentencing via legal calls with his counsel. Indeed,

---

[2] Defense counsel's assertions regarding the New York City Board of Corrections calling for the release of individuals from city jails are inapposite. See Def. Br. 2. Unlike BOP facilities, there have been confirmed cases of COVID-19 in city jails.

[3] Indeed, the defendant misstates the relevant standard several times, mistakenly urging that the Court should consider that provision of the Bail Reform Act governing a defendant's pretrial release. See, e.g., Def. Br. at 2 (citing flight risk and danger to the community). Because the defendant was convicted at trial, the applicable legal standard is that set forth in 18 U.S.C. § 3143, as set forth at length in the March 17 Letter and prior filings.

3

defense counsel acknowledges that he has already been able to speak with the defendant by phone. Def. Br. 3 n.6.[4]

Based on the facts here, the more persuasive precedent is Judge Margo K. Brodie's decision in United States v. Hamilton, No. 19-CR-54 (NGG), where the court denied a defendant's motion for release, in which the defendant argued that COVID-19 presented a compelling reason favoring release. As the court explained, "There is no outbreak at the MDC. MDC has taken measures in the same fashion that the Court has and both local, state and federal governments have." Ex. A at 3. Thus, the court found there were no new circumstances to alter the prior determinations that the defendant posed a danger to society and was a risk of flight. Id. at 7.

As set forth at length in the government's prior submissions, 18 U.S.C. § 3143 statutorily mandates the defendant's incarceration pending sentencing, where he faces a United States Sentencing Guidelines range of 63 to 78 months' incarceration. See 18 US.C. § 3143(a)(2); Presentence Investigation Report ¶ 75. The defendant has not demonstrated "exceptional reasons" justifying his release pursuant to 18 U.S.C. § 3145(c). As noted by Judge Brodie, the BOP is monitoring the status of the COVID-19 virus and is taking emergency steps to ensure the safety of its staff, inmates and the public. The defendant is not uniquely situated with respect to the risk of infection of COVID-19, and his personal circumstances do not overcome the mandatory-remand provision of § 3143 or the Court's prior determination that he has not presented an "extraordinary reason" for release under § 3145(c). The defendant should remain detained.

---

[4] The defendant's attempt to rely on a decision by Magistrate Judge Jamie Orenstein denying the government's motion to detain a defendant in United States v. Raihan, No. 20-CR-68 (BMC) is equally inapposite. Unlike the defendant in Raihan, the defendant was incarcerated before widespread community transmission of COVID-19 within the United States, and his incarceration therefore poses no additional risk to the community within the MDC. In any event, the day after that detention hearing, the defendant in Raihan promptly cut off his GPS monitoring bracelet, was rearrested and then ordered detained by Magistrate Judge Lois Bloom. See Raihan, ECF Dkt. Nos. 21-22.

4

III.	Conclusion

For the reasons set forth above, the government respectfully submits that the defendant's motion to reconsider should be denied.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:	  /s/                
Kayla Bensing
Gillian Kassner
Assistant U.S. Attorneys
(718) 254-6279

cc:	The Honorable LaShann DeArcy Hall, United States District Judge (by ECF)
Defense Counsel (by ECF)
Clerk of Court (by ECF)