# SHER TREMONTE LLP

March 24, 2020

**VIA ECF AND EMAIL**

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:**    ***United States v. Howard Campbell***
> Case No. 18 Cr. 467 (LDH)

Dear Judge DeArcy Hall:

We write on behalf of our client, Howard Campbell, in reply to the government's argument as to the applicable Sentencing Guidelines, set forth in its sentencing submission dated March 23, 2020.  Dkt. # 136.  We will address the bulk of the government's arguments in our sentencing submission; however, we provide the following brief response specifically in response to the government's Guidelines calculation for Your Honor's consideration in connection with our bail application.[1]

> I.    Offense Level
>
> A.  Drug Quantity

Mr. Campbell's offense level based on drug quantity should be 12, not 18.  The government's argument that Mr. Campbell should be held accountable for more than fifteen grams of cocaine base is based on allegations that it failed to prove at trial.  The bulk of the cocaine base on which the government relies is what was supposedly found in the "extra flap" of Mr. Campbell's boxer shorts.  But neither of the officers who testified at trial claimed to have seen any such "extra flap" or to have observed drugs stored in Mr. Campbell's boxers.  *See, e.g.*, Trial Tr. 707:18-19 ("Q: You didn't look inside Mr. Campbell's underwear, did you?  A [Officer Lebron]: I did not.").  The government attempts to fill this evidentiary gap by pointing to Officer Ramos's suppression hearing testimony that he observed a "small flap," which "was like a little front pocket in front of his boxer[s]" where Mr. Campbell was supposedly storing "a huge amount of crack."  Gov't Ltr. at 2-3.  But the government did not introduce any such boxer shorts at trial and declined to call Officer Ramos as a witness.  The government bears the burden of

---

[1]    By email dated March 19, 2020, we advised Probation Officer Roberta Houlton that in light of our inability to access our client during the current crisis, we would be unable to provide full objections to the PSR by the deadline of Wednesday, March 25.  Officer Houlton consents to an adjournment of that deadline so long as it is consistent with the Court's schedule for sentencing.

establishing drug weight for purposes of sentencing, *see Gonzalez v. United States*, No. 97-CV-1903 FB, 2000 WL 297721, at *6 (E.D.N.Y. Mar. 9, 2000), and has fallen short of meeting it here.

In any event, the government's submission fails entirely (despite clear direction by this Court) to address Mr. Campbell's argument that the Court should treat the drug weight consistent with the Guidelines for powder cocaine, which would be at level 12 even if Mr. Campbell had possessed up to *fifty* grams rather than the fifteen the government argues. As the government has no response whatsoever to the defense's arguments on this issue, the Court should apply an offense level of 12 for drug quantity.

B. <u>Firearm Enhancement</u>

The government's submission is similarly unpersuasive as to the firearm enhancement. The government's argument rests largely on shock at the suggestion that NYPD officers would plant evidence,[2] but is sparse on facts to support its contention that a gun was present in Mr. Campbell's backpack at the time of his arrest. It relies entirely on Officer Senra's suppression hearing testimony that at the scene she pulled a white *cloth* out of the backpack, while at the precinct she found the gun wrapped in a white *t-shirt*. Gov't Ltr. at 5. But it is clear from the video attached to our December 17, 2019 submission that Senra pulled out *both* a white t-shirt *and* a smaller white cloth at the scene, and neither contained a gun. The government hypothesizes that the gun was wrapped in a t-shirt at the bottom of the backpack, but both the white cloth and t-shirt visible on the video were inventoried, and Senra's records at the time of the arrest do not include an additional t-shirt recovered from the backpack. Notably, the "inventory search" conducted at the precinct that produced the gun was not recorded on video.[3]

The government has not met its burden to establish that a gun was present at the time of the arrest. It relies exclusively on the record of a suppression hearing where the subject of inquiry was the location of the *backpack*, not the gun, and thus the testimonial record is, at best, silent as to the whereabouts of the gun at the time of the arrest. The

---

[2]    *But see* Vincent Barone & Andrew Denney, *NYPD cop caught planting stun gun in car by his own bodycam: lawsuit*, N.Y. Post, Jan. 3, 2020, https://nypost.com/2020/01/03/nypd-cop-caught-planting-stun-gun-in-car-by-his-own-bodycam-lawsuit/; Aaron Katersky & Christina Carrega, *Former New York City cop indicted for planting a knife on man he shot: Sources*, ABCNews, Mar. 22, 2019, https://abcnews.go.com/US/york-city-police-officer-indicted-tampering-crime-scene/story?id=61871269; Joseph Goldstein, *Teenager Claims Body-Cams Show the Police Framed Him. What Do You See?*, N.Y. Times, Nov. 19, 2018, https://www.nytimes.com/2018/11/19/nyregion/body-cameras-police-marijuana-arrest.html (describing case dropped by the Brooklyn DA's Office where gap in body-cam footage suggested officers planted marijuana in defendant's car); John Marzulli, *We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies*, N.Y. Daily News, Oct. 13, 2011, https://www.nydailynews.com/news/crime/fabricated-drug-charges-innocent-people-meet-arrest-quotas-detective-testifies-article-1.963021.

[3]    The government also relies on statements of Sergeant Kocek and Officer Lebron on the body-cam footage where they state they did not search the entire backpack. These self-serving statements should be given little weight, as they are made by the same officers who concocted the pretextual "strip search" rationale to turn off the body cams just before the "search" that purportedly yielded the drugs in Mr. Campbell's boxers.

video evidence, meanwhile, shows no gun in the backpack. As the government has declined to supplement the record with a *Fatico* hearing, it cannot meet its burden. At a minimum, at this stage, the Court should resolve any ambiguity in Mr. Campbell's favor.

 II. Criminal History Category

 The government concedes that Mr. Campbell is in Criminal History Category IV, not V. Even giving the government the benefit of the doubt on the firearm enhancement, an offense level of 14 at Criminal History Category IV yields a Guidelines range of 27 to 33 months. In other words, *the only factor driving the government's higher Guidelines calculation is the crack-powder cocaine disparity*.

 But the government's arguments on Mr. Campbell's criminal history, too, are flawed, and in any event cannot be resolved in the government's favor at this stage. As to the question whether Mr. Campbell's 2000 case, which yielded a sentence of 28 months to 7 ½ years, should count for criminal history points, the government concedes the defense's argument that the New York State Department of Corrections and Community Supervision ("DOCCS") ran the sentence consecutively to his 2001 case. Gov't Ltr. at 6. That is why Mr. Campbell was paroled at his first eligibility date after he served the minimum *combined* sentence—28 months plus 100 months. *See* N.Y. Penal L. § 70.40 ("A person who is serving one or more than one indeterminate sentence of imprisonment and one or more than one determinate sentence of imprisonment which run consecutively may be paroled at any time after the expiration of the sum of the minimum or aggregate minimum period of the indeterminate sentence or sentences . . . .").

 The government relies, however, on the unverified, unsworn "advise[ment]" of a DOCCS official that the agency "merged all of the sentences" into "one aggregate sentence," *id.* at 6-7, but cites no provision of New York law that would give DOCCS the authority to do so. In fact, New York law allows such "[m]erger" only where two indeterminate sentences are run *concurrently*, not where (as here) they are run consecutively. *See* N.Y. Penal L. § 70.30(1)(a)-(b).[4] The government's reliance on a conversation it had with an unidentified official about how DOCCS treated the sentence (contrary to New York law) is no substitute for the *evidence* it must adduce to establish the facts relevant to sentencing, including as to criminal history. *See United States v. Campos-Rodriguez*, 475 F. App'x 367, 369 (2d Cir. 2012) (summary order). The government states that even assuming the two minimum sentences were consecutive, it is "impossible to know" which sentence Mr. Campbell served first. Gov't Ltr. at 7 n.6. But it is the *government's* burden to establish the facts regarding criminal history, not Mr.

---

[4] It is not clear on the current record why DOCCS ran the sentences consecutively when the sentencing court ordered them to run concurrently. While the government brushes aside Mr. Campbell's assertion that this decision likely subjected him to a longer term of incarceration than he would have otherwise served, Gov't Ltr. at 6 n.4, in a related context the Second Circuit has held that DOCCS' failure to "implement the sentencing court's directive of concurrency" violates due process. *Francis v. Fiacco*, 942 F.3d 126, 142 (2d Cir. 2019).

Campbell's.  If it is indeed impossible to know, the ambiguity must be resolved in Mr. Campbell's favor.[5]

As to the additional criminal history point that the government ascribes to Mr. Campbell based on his 2017 violation for disorderly conduct, it does not alter the Criminal History Category in either direction, so the Court need not decide this issue now.  It is, in any event, not clear whether that case should count as a prior sentence.  Under U.S.S.G. § 4A1.2(c)(1), a conviction for disorderly conduct does not count for criminal history score unless one of the exceptions in subsection (A) or (B) applies.  Under New York law, a conditional discharge (the sentence Mr. Campbell received) for a criminal violation is a period of probation of one year, N.Y. Penal § 65.05, so subsection A does not apply.  The government argues, nevertheless, that subsection B applies because the 2017 case involves an unproven allegation that Mr. Campbell was arrested selling marijuana on Herkimer Place, nearby where he was arrested for the instant offense.  We have not had an opportunity to obtain the relevant records regarding the 2017 arrest from Kings County Criminal Court, and, because of our limited access to Mr. Campbell, we have not been able to consult with him fully on whether to contest the allegation as stated in the PSR.  Moreover, to the extent the conduct in the 2017 case is similar to conduct at issue here, it is conduct for which Mr. Campbell was *acquitted* in the instant case.  Accordingly, at least until the record is further developed on this issue, the Court should decline to apply an additional criminal history point for the 2017 case.

III.    Departure Provision

Under U.S.S.G. § 5K2.0(a)(2)(B), the Court may depart from the Guidelines "in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."  As we have detailed in our prior submission and the Court is well-aware, the current public health emergency is unprecedented, certainly in the history of modern federal sentencing.  Since we last appeared before Your Honor, the BOP has reported its first COVID-19 infection at the MDC.  The facility has been on total lockdown since that individual tested positive, but we are informed that he was in close quarters for several days with other inmates from the intake unit as well as another unit before he was taken

---

[5]    The government's additional arguments that attempt to extend the 2000 case into the 15-year period are red herrings.  The parole violations that occurred after Mr. Campbell's release in 2011 were based on the 2001 case, not the 200 case.  They cannot extend the 2000 case into the 15-year period, because Mr. Campbell would have maxed out on the sentence by that time (*i.e.*, more than 7 ½ years from sentencing).  The State cannot impose parole when a defendant has exceeded the maximum term of an indeterminate sentence, and the only other provision for post-release supervision under New York law applies to determinate sentences only.  N.Y. Penal L. § 70.45.  Accordingly, Mr. Campbell was not on supervision for the 2000 case after his release in 2011.  The government's reliance on U.S.S.G. § 4A1.2, cmt. n. 2 is also misplaced.  By its terms, that application note is "for purposes of applying § 4A1.1(a), (b), or (c)," *i.e.*, determining how many criminal points to apply for a prior sentence, *not* whether the prior sentence comes within the 15 or 10-year period.  The Eleventh Circuit's unpublished decision in *United States v. Lewis*, No. 01-11031, 2002 WL 35574078 (11th Cir. Mar. 5, 2002), is inapposite.  There, the sentences ran *concurrently*, and thus the defendant continued to run both sentences into the 15-year period. *Id.* at *4.  Here, by contrast, Mr. Campbell served the minimum term of each sentence consecutively, and thus completed the 28 months he served on the 2000 case prior to the 15-year period.

to the hospital and later diagnosed. The crisis that we asserted in our initial application was likely to happen is now actually taking place. The Sentencing Guidelines do not account for such a circumstance, and accordingly a downward departure is warranted under § 5K2.0(a)(2)(B). *See United States v. Hammond*, 37 F. Supp. 2d 204, 208 (E.D.N.Y. 1999) (Weinstein, J.) (granting downward departure under § 5K2.0 based in part on BOP's restrictive conditions imposed in response to defendant's HIV status).

       IV.     Conclusion

       Taking into account the crack-powder cocaine disparity, the dispute between the parties as to the Guidelines is now, at most, a 15-to-21 month range versus a 27-to-33 month range. Under these circumstances, the Court should grant bail.

Respectfully submitted,

/s/
Noam Biale
Michael Tremonte
Alexandra Elenowitz-Hess

*Attorneys for Howard Campbell*

cc:    AUSA Kayla Bensing (via ECF)
       AUSA Gillian Kassner (via ECF)
       Howard Campbell (by US Mail)